# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GARY FORGE** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. |
| **SISTERS OF CHARITY OF LEAVENWORTH** | ) |
| | ) |
| **KRISTINA RASTORFER** | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

Plaintiff complains against the above-named Defendants as follows:

**I.   THE PARTIES.**

1. Plaintiff is a citizen of the United States.

2. Defendant Kristina Rastorfer (hereinafter "Rastorfer"), upon information and belief, is a resident of the State of Kansas.

3. Rastorfer occupied the corporate role of overseeing the Human Resources Department, and in that capacity made decisions with respect to Plaintiff's exercise of his FMLA rights, Plaintiff's FMLA leave, Plaintiff's termination, and whether Plaintiff should be returned to work after receiving a full release from his doctor.

4. Rastorfer directly, or if not directly then certainly indirectly, acted in the interest of Defendant Sisters of Charity of Leavenworth in providing input and making decisions as to Plaintiff's exercise of FMLA rights and his taking FMLA leave, and his future need for FMLA leave, the termination of Plaintiff's employment, and decisions regarding

1

discouraging Plaintiff from re-applying to work for Sisters of Charity, and whether Plaintiff should be allowed to return to work and/or be rehired.

5. Rastorfer meets the definition of "employer" contained within the Family Medical Leave Act.

6. Defendant Sisters of Charity of Leavenworth is a Kansas Not for Profit Corporation (hereafter referred to as "Sisters of Charity"), with its principal place of operation at 4200 South 4th Street, Leavenworth, Kansas 66048.

## II. **JURISDICTION AND VENUE**.

7. The jurisdiction of the Federal Court is invoked because the Plaintiff's claims arise under the statutes and laws of the United States, namely the Americans with Disabilities Act ("ADA") pursuant to 42 U.S.C. § 12112 et seq., the Family Medical Leave Act ("FMLA") pursuant to 29 U.S.C. § 2601, et seq., and the Age Discrimination in Employment Act ("ADEA") pursuant to 29 U.S.C. § 623, et seq.

8. Venue in the United States District Court for the District of Kansas is proper because at least one of the Defendants is located within the District and because Kansas is where the claims arose.

## III. **STATEMENT OF FACTS**.

9. Plaintiff became employed with Sisters of Charity on November 6, 1989 as a Boiler Operator.

10. The records maintained by Sisters of Charity regarding Plaintiff's employment do not memorialize or reflect Plaintiff ever being disciplined or counseled about misconduct or poor work performance.

12. All written evaluations -- maintained by Sisters of Charity as to Plaintiff's work performance -- indicate Plaintiff's work performance was exemplary.

13. On or about July 14, 2016, Plaintiff contracted a "skin eating" infection, resulting in him being hospitalized and almost dying.

14. Plaintiff's doctor provided the following diagnosis for Plaintiff's medical condition (which will hereafter be referred to as "Disability"):

**Assessment:**
1. H/O necrotizing fasciitis – Z87.39 (Primary)
2. Pyogenic arthritis of right knee joint, due to unspecified organism – M00.9.

15. After Plaintiff used twelve weeks of approved FMLA leave because of his Disability, he made a formal request (at the end of November of 2016) to Sisters of Charity for accommodation pursuant to the Americans with Disabilities Act.

16. Plaintiff's request was for additional time away from work, up to and including January 6, 2017, to heal from his Disability.

17. On December 9, 2016, Sisters of Charity granted Plaintiff's request by indicating his job was protected until January 6, 2017.

18. As part of the December 9, 2016 granting of his request for accommodation, Sisters of Charity directed Plaintiff to obtain an opinion from his doctor indicating when he would be physically able to return to work.

19. Plaintiff did as he was directed, and the doctor's opinion (provided to Human Resources on December 30, 2016) indicated Plaintiff could return to work on February 6, 2017 without restrictions (i.e. specifically, the doctor wrote: "I would anticipate that Gary would be released for full duty with no restrictions on February 6, 2017.").

20. After being presented with the requested opinion and Plaintiff's request that he be allowed until February 6, 2017 to heal from his Disability and return to work, Sisters of Charity informed Plaintiff -- on January 6, 2017 via a telephone call from Rastorfer -- that his request would not be granted or accommodated (hereafter "Thirty-Day Extension Denied") but, instead, Plaintiff's employment would be terminated.

21. During the January 6, 2017 telephone call, Rastorfer also indicated that Plaintiff would not be allowed to re-apply for his job, and her only explanation for this was: "They're going a different way."

22. A proposed Severance Agreement -- sent to Plaintiff soon after he was told of his termination (which Plaintiff did not sign) -- provided he was agreeing that:

> Employee will not apply for future employment with any Releasee [defined to include Sisters of Charity and all of its agents] and that, should Employee apply for employment with any Releasee, the Releasee will summarily reject Employee's application and will have no obligation to consider Employee for any position.

(brackets added).

23. Back on October 5, 2016, Rastorfer told Plaintiff that, in the event his employment terminated because of his Disability, he could always re-apply for his job and, so long as he was rehired within one year of his termination date, all his benefits and compensation would remain the same.

24. Within a few weeks after the October 5, 2016 date, the highest ranked Sister at the time (Sister Jean Anne Panisko) confirmed to Plaintiff what Rastorfer told him (as described in the preceding paragraph).

25. At the time of the Thirty-Day Extension Denial decision, Plaintiff had more than enough vacation and sick time to cover the additional 30 days.

26. At the time of the Thirty-Day Extension Denial decision, no reasonable explanation for the decision was provided to Plaintiff.

27. On February 2, 2017, Plaintiff returned to his doctor and was given a full release to return to work, with no restrictions (hereafter "Full Release").

28. With the Full Release, and having not heard that anyone had been hired to replace him, Plaintiff -- on February 20, 2017 -- faxed his Full Release to Human Resources. (Fax of Full Release, **Ex. A**).

29. As part of faxing the Full Release to Human Resources, Plaintiff requested he be returned to his position if it remained open, or be considered for another job.

30. On February 22, 2017, Plaintiff had a telephone conference with Rastorfer.

31. On February 22, 2017, Plaintiff's former position at Sisters of Charity had not been filled, and was still open and available.

32. As of February 22, 2017, no one had been hired to fill Plaintiff's former position at Sisters of Charity.

33. On February 22, 2017, there were other vacant positions -- in the same department Plaintiff worked in at the time he was terminated -- that Plaintiff was qualified to perform.

34. As of February 22, 2017, no one had been hired to fill the vacant positions described in the preceding paragraph.

35. But for consideration of his Disability, Sisters of Charity were aware Plaintiff was qualified for, and could perform, any of the vacant positions described in the two preceding paragraphs.

36. During the February 22, 2017 telephone call between Plaintiff and Rastorfer, Rastorfer did not deny that Plaintiff's position remained open.

37. During the February 22, 2017 telephone call between Plaintiff and Rastorfer, Rastorfer repeatedly referenced there being a "vacant position" available.

38. During the February 22, 2017 telephone call between Plaintiff and Rastorfer, Rastorfer did not invite Plaintiff to come back to work, but instead indicated he would need to submit a resume and fill out an application just as if he was a new applicant for employment at Sisters of Charity.

39. From working with him for several years, Rastorfer knew Plaintiff did not have a computer, was not computer savvy, and did not have a resume to submit for the vacant position.

40. During the February 22, 2017 telephone call between Plaintiff and Rastorfer, Rastorfer made it clear Plaintiff would have no preference over other applicants, she made a point to say there were other highly qualified applicants, and she indicated it wasn't certain Plaintiff would even be selected for an interview.

41. Throughout the February 22, 2017 telephone call, Rastorfer made a point to tell Plaintiff he would be treated just like any other applicant and, if he were selected, it would be like he was starting anew, with no seniority, no vacation, sick leave, or other benefits that he had accrued over the twenty-five years of employment.

42. When Plaintiff asked -- during the February 22, 2017 telephone call -- if he would be paid the same rate as before he was terminated, Rastorfer initially suggested he would not, but then indicated she hadn't researched it, but then said she would research it if Plaintiff wanted her to.

43. Toward the end of the February 22, 2017 telephone call, Rastorfer reiterated that she wanted to be clear there were no guarantees as to Plaintiff getting his job back.

44. The impression given by Rastorfer -- during the February 22, 2017 telephone call -- was she was not excited about the prospect of Plaintiff returning to work at Sisters of Charity.

45. The impression given by Rastorfer -- during the February 22, 2017 telephone call -- was that Plaintiff would be a long-shot for being rehired by Sisters of Charity and, even if he was, he would revert twenty-five years to the status of a brand-new employee.

46. Sisters of Charity gave no reasonable explanation for why Plaintiff was not simply placed back in the job he had before his Disability.

47. Rastorfer gave no explanation as to what purpose a resume, application, and an interview would serve with respect to an employee (i.e. Plaintiff) who had provided exemplary and discipline-free work performance to Sisters of Charity for over twenty-five years.

48. Plaintiff believes the decisions to terminate his employment, and not invite him back to work or rehire him, were discriminatory based on his Disability, being regarded as disabled, and his age of 61 at the time of his termination and at the time he sought to be returned to work.

49. Plaintiff also believes that Sisters of Charity terminated his employment, and refused to return him to work, in retaliation for, and in interference of, him taking FMLA leave and/or the prospect of him taking future FMLA leave based on his Disability.

## IV. **VIOLATION OF FMLA AGAINST DEFENDANTS**.

50. Plaintiff hereby incorporates the foregoing paragraphs by reference.

51. The FMLA makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right pursuant to the FMLA.

52. Defendants are employers within the meaning of the FMLA.

53. Plaintiff was entitled to FMLA protected leave for his Disability.

54. Defendants believed and anticipated that Plaintiff would request and or take additional FMLA leave due to his Disability.

55. Defendants interfered with and restrained Plaintiff's FMLA rights by retaliating against him for utilizing FMLA, and terminated him to ensure he could not exercise the right to FMLA leave in the future because of his Disability.

56. Defendants retaliated against Plaintiff for his exercise and attempted exercise of FMLA rights by terminating his employment.

57. Plaintiff is entitled to all damages authorized by 29 U.S.C. § 2617, including lost wages and benefits, interest, liquidated damages, attorneys' fees, and equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendants Rastorfer and Sisters of Charity for all damages recoverable under the FMLA, including his attorney fees, the costs of this action, reinstatement to the former or equivalent position he had with Sisters of Charity, and such other and further relief as the Court may deem just and proper.

## V.     **PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF THE ADA**.

54.     Plaintiff hereby incorporates the foregoing paragraphs by reference.

55.     Plaintiff was an individual suffering from a disability and/or a perceived disability from the above-described "skin eating" infection he contracted (and the residual effects of the infection) (hereafter collectively referred to as "Disability").

56.     Plaintiff engaged in protected activity by disclosing his Disability to Sisters of Charity, by requesting and taking time off to seek and receive medical treatment connected with his Disability, and by making formal requests for ADA accommodation from Sisters of Charity.

57.     Sisters of Charity became concerned about Plaintiff's Disability, and regarded him as someone who, because of his Disability, and history thereof, and advancing age [Plaintiff was 61 when terminated], likely would frequently require accommodation to deal with the Disability, and other health problems connected with the Disability.

58.     Sisters of Charity failed to accommodate Plaintiff's Disability, terminated his employment, discouraged him from applying for his old position and/or vacant positions, and failed to return him to work or rehire him, because of his Disability and/or because Sisters of Charity regarded Plaintiff as disabled, all in violation of the ADA.

59.     Sisters of Charity terminated Plaintiff's employment, discouraged him from applying for his old position and/or vacant positions, and failed to return him to work or rehire him, because of, and in retaliation for, his disclosure of his Disability, his requests for ADA accommodation, and his exercise of rights connected thereto, all in violation of the ADA.

60. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within the appropriate time-period and filed a complaint within 90 days after the date of receipt of a right to sue letter.

61. As such, this action is timely and Plaintiff has exhausted all administrative prerequisites to filing this action.

62. As a direct and proximate result of conduct by Sisters of Charity, Plaintiff has sustained and will continue in the future to sustain damages in the form of lost income, emotional pain, suffering, mental anguish, inconvenience, and loss of enjoyment of life.

63. Plaintiff is entitled to all damages recoverable under the ADA, including economic damages, emotional distress, pre and post-judgment interest, punitive damages, attorneys' fees and any other relief the Court deems just and equitable.

WHEREFORE, Plaintiff prays for judgment against Sisters of Charity for all damages recoverable under the ADA, including his attorney fees, the costs of this action, reinstatement to the former or equivalent position he had with Sisters of Charity, and such other and further relief as the Court may deem just and proper.

## VI. **PLAINTIFF'S CAUSE OF ACTION FOR VIOLATION OF THE ADEA**.

64. Plaintiff hereby incorporates the foregoing paragraphs by reference.

65. Sisters of Charity has engaged in a pattern and practice of discriminating against older employees, including Plaintiff, all in violation of the ADEA.

66. In not accommodating Plaintiff's request for extension of leave time, in deciding to terminate Plaintiff's employment, in discouraging him from applying for his old

position and/or vacant positions, and failing to return him to work or rehire him, Sisters of Charity and its employees were motivated by Plaintiff's age.

67. The termination of Plaintiff's employment, discouraging him from attempting to return to work, and failing to return Plaintiff to work and/or rehire him, all violate the ADEA.

68. Violation of the ADEA by Sisters of Charity was willful and in reckless disregard of Plaintiff's rights, thereby, entitling Plaintiff to an award of liquidated damages.

69. Sisters of Charity terminated Plaintiff's employment, and refused and discouraged him from again becoming their employee, because of his age, in violation of the ADEA.

70. Plaintiff filed a charge of discrimination with the EEOC within the appropriate time-period and filed a complaint within 90 days after the date of receipt of a right to sue letter.

71. As such, this action is timely and Plaintiff has exhausted all administrative prerequisites to filing this action.

72. As a direct and proximate result of the conduct by Sisters of Charity, Plaintiff has sustained and will continue in the future to sustain damages in the form of lost income, emotional pain, suffering, mental anguish, inconvenience, and loss of enjoyment of life.

73. Plaintiff is entitled to all damages recoverable under the ADEA, including economic damages, emotional distress, pre and post-judgment interest, liquidated damages, attorneys' fees and any other relief the Court deems just and equitable.

WHEREFORE, Plaintiff prays for judgment against Sisters of Charity for all damages recoverable under the ADEA, including his attorney fees, the costs of this action, reinstatement to the former or equivalent position he had with Sisters of Charity, and such other and further relief as the Court may deem just and proper.

## VII. **DEMAND FOR JURY TRIAL**.

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## VIII. **DESIGNATION OF PLACE OF TRIAL**.

Plaintiff hereby requests that the trial be held at Kansas City, Kansas.

Respectfully submitted:

By: /s/ Patrick G. Reavey            .
    Patrick G. Reavey, KS# 17291
    Kevin Koc KS# 24953
    Livestock Exchange Building
    1600 Genessee, Suite 303
    Kansas City, MO 64102
    Ph: 816.474.6300
    Fax: 816.474.6302
    Email: preavey@reaveylaw.com
    Email: kkoc@reaveylaw.com
    Website: www.reaveylaw.com
    **ATTORNEYS FOR PLAINTIFF**