## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Gary Forge,**

        **Plaintiff,**

**v.**                                        **Case No. 18-2204-JWL**

**Sisters of Charity of Leavenworth; and**
**Kristina Rastorfer,**

        **Defendants.**

## MEMORANDUM & ORDER

In this lawsuit, plaintiff Gary Forge alleges that his former employer, defendant Sisters of Charity of Leavenworth ("SCL"), violated the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., by terminating his employment and then failing to rehire him on the basis of his disability and/or age.[1]  Plaintiff further alleges that SCL violated the ADA when it failed to provide a reasonable accommodation for his disability and when it retaliated against him for requesting an accommodation by terminating his employment and by failing to rehire him.

This matter is presently before the court on the parties' cross-motions for summary judgment on plaintiff's failure-to-accommodate claim under the ADA and defendants' motion for

---

[1] In the pretrial order, plaintiff also asserts that SCL, based on plaintiff's age, failed to accommodate his request for an extension of leave time and, based on plaintiff's age and/or disability, discouraged him from attempting to return to work.  These allegations are subsumed in his termination and failure-to-rehire claims and the parties do not separately analyze them in their submissions.

summary judgment on all remaining claims as well as its mitigation of damages defense. As will be explained, plaintiff's motion for summary judgment on his failure-to-accommodate claim (doc. 46) is denied and defendants' motion for summary judgment (doc. 48) is granted in part and denied in part. Specifically, the court denies SCL's motion for summary judgment regarding plaintiff's failure-to-rehire claims and its mitigation defense and grants summary judgment in favor of defendants on all other claims.[2]

## I.    Facts

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to the nonmoving party. Plaintiff Gary Forge began working for SCL as a power plant operator in 1989. At all times pertinent to this lawsuit, defendant Kristina Rastorfer has been the human resources director of SCL. The last day that plaintiff worked as a power plant operator was July 6, 2016. Plaintiff was scheduled to work on July 7, 2016 but he contacted his direct supervisor, Mike Vornholt, to notify him that he was having medical problems. Ultimately, plaintiff was diagnosed with necrotizing fasciitis, a flesh-eating bacterial condition. In July 2016, plaintiff's treating physician, Dr. Nicholas Aberle, signed an FMLA certification estimating that plaintiff's period of incapacity would extend at least through October 1, 2016.

---

[2] In the pretrial order, plaintiff also asserted claims under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2611-2654 against SCL and defendant Kristina Rastorfer. Defendants moved for summary judgment on those claims and plaintiff has not addressed those claims in his response. In their reply brief, defendants represent to the court that plaintiff has agreed to "drop" his FMLA claims. In the absence of any objection from plaintiff, then, the court grants as unopposed defendants' motion for summary judgment on the FMLA claims. Moreover, because the FMLA claims are the only claims asserted against defendant Kristina Rastorfer, the court dismisses Ms. Rastorfer as a defendant in this case.

SCL granted plaintiff's request for 12 weeks of FMLA leave beginning in July 2016. Plaintiff exhausted his FMLA leave on October 5, 2016. SCL's employee handbook provides that SCL employees may request a personal leave of absence by completing a request form and that SCL "may grant" such requests in "very special circumstances." The record reflects that SCL's standard practice is to deny requests for leave that extend for longer than 6 months, regardless of whether the employee has available sick time or Paid Time Off.[3] On October 4, 2016, plaintiff reached out to Ms. Rastorfer to inquire about extending his leave of absence. SCL agreed to the request and granted him a 30-day "Personal Leave of Absence" to provide time for long-term disability claim processing and for additional recovery time. In her letter confirming that agreement, Ms. Rastorfer further stated:

> The Personal Leave of Absence will be granted for a 30-day period from 10/6/16-11/6/16. At the end of those 30 days, we agreed to evaluate your return to work status and, if needed, grant a one-time extension of the Personal Leave of Absence for an additional 30 days.

In early November, plaintiff notified Ms. Rastorfer that he required additional recovery time and needed a 30-day extension of his leave. On November 6, 2016, SCL granted plaintiff a 30-day extension of leave, effective from November 6, 2016 to December 6, 2016. In her letter confirming the extension of leave, Ms. Rastorfer advised plaintiff that they would evaluate his return to work status at the end of the extension, but that "further extensions of your Personal Leave of Absence are not guaranteed."

---

[3] Ms. Rastorfer avers that SCL, in the past 9 years, has granted leave requests of longer than 6 months on only two occasions and both employees were Certified Nurse Aides.

On November 25, 2016, plaintiff sent a letter to Ms. Rastorfer requesting another 30-day extension, through January 6, 2017. In that letter, plaintiff stated that he was "still recovering from a serious illness resulting in a disability" and that he was not able to provide "a specific date for return to work in light of continuing medical treatment, including therapy." Plaintiff estimated a return-to-work date of January 6, 2017 "at which time medical reevaluation may be necessary." Plaintiff also contacted Sister Jean Ann Panisko, SCL's Community Treasurer, to request the extension. Plaintiff indicated to her that "if he had one more month, that would be sufficient." In a December 6, 2016 phone call to plaintiff, Ms. Rastorfer granted plaintiff's request for an extension of leave through January 6, 2017. In her follow up letter confirming the extension, Ms. Rastorfer indicated that the parties had agreed that plaintiff, no later than December 30, 2016, "would provide the Sisters of Charity with a physician's note stating when, and if, he/she anticipates your return to work." Ms. Rastorfer also wrote, "The Sisters of Charity do not expect to hold your position open past January 6, 2017 due to staffing needs within the Power Plant department and due to the amount of time you have been on leave (6 months)."

On December 30, 2016, Dr. Aberle faxed SCL an Evaluation for Work Release that did not release plaintiff to return to work on or before January 6, 2017. Dr. Aberle's evaluation indicated his belief that plaintiff "has recovered approximately 90% of the way." Further, Dr. Aberle "anticipated that [plaintiff] would be released for full duty with no restrictions on February 6, 2017." The evaluation also indicated that plaintiff "should continue physical therapy until then" and that a follow up medical evaluation should occur in 4 weeks. Plaintiff may have reached out to Ms. Rastorfer to verify that she got the information from Dr. Aberle but did not otherwise

contact SCL about an extension of leave or his continued employment.[4] Ms. Rastorfer, however, interpreted Dr. Aberle's evaluation as a request from plaintiff for another 30-day extension of his leave.

The record reflects that Ms. Rastorfer and Sister Panisko discussed the doctor's evaluation and whether to grant another leave request. Sister Panisko testified that SCL ultimately decided to decline another extension for a variety of factors, including that the doctor's evaluation did not state that plaintiff could return to work on February 6, 2017; that plaintiff had already been given 6 months of leave; and that the power plant staff had been "doing lots of overtime." Sister Panisko testified that she and Ms. Rastorfer together made the decision to terminate plaintiff's employment after deciding that they would no longer grant additional extensions of leave. On January 6, 2017, Ms. Rastorfer called plaintiff and notified him that his employment was terminated. After that time, SCL presented a settlement agreement and release to plaintiff which included a "no reapply" provision. Plaintiff declined to sign that agreement.

On February 20, 2017, plaintiff sent to Ms. Rastorfer a release from Dr. Aberle indicating that plaintiff had been released to return to work with no restrictions on February 2, 2017. In his note, plaintiff stated:

---

[4] Plaintiff asserts in his Statement of Facts that he called Sister Panisko and asked for an extension of leave until February 2017 and that he told her he was sure that he could come back after January 2017. Plaintiff also asserts that Mr. Vornholt testified that Ms. Rastorfer told him that plaintiff would be able to return to work at the beginning of February. Both statements misstate the record. Sister Panisko testified that plaintiff called her to discuss an extension after he had been on personal leave for two months and was requesting a third month—i.e., an extension to January 6, 2017. Mr. Vornholt was asked by counsel whether Ms. Rastorfer ever told him that plaintiff was telling SCL that "he just needs another 30 days, and he will be released with no restrictions" to which Mr. Vornholt responded, "I believe so."

I can now come back to work. I know before you said my position at the Power Plant would not be held for me, but is my job still open? If it is, or there is another job for me, I would like to have it. So please call or fax me if or when I can come back to work.

On March 1, 2017, plaintiff and Ms. Rastorfer spoke on the telephone and plaintiff recorded the conversation. In that conversation, Ms. Rastorfer advised plaintiff that SCL had an "open position" for a power plant operator and that plaintiff was "more than welcome to apply, fill out an application or come in and fill one out or email your resume." Ms. Rastorfer indicated that plaintiff would be required to send in his resume or submit a formal application for the position and then go through an interview process. Ms. Rastorfer reiterated to plaintiff that he could reapply but that he would be "treated like any other applicant" in terms of the hiring process. The transcript of this phone call indicates that the parties primarily discussed plaintiff's potential pay, seniority and PTO balance upon rehiring and that the conversation ended when Ms. Rastorfer agreed to "research the pay question" and call plaintiff back with "a solid answer." The record is silent as to whether Ms. Rastorfer called plaintiff back and plaintiff never submitted his resume or a formal application. He has not worked since his employment was terminated. In 2017 and 2018, he received social security disability insurance (SSDI) benefits.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.


## II.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving

party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id*. at 1143-44.

The legal standard does not change if the parties file cross-motions for summary judgment. Each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law. *Atlantic Richfield Co. v. Farm Cr. Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III.    ADA Claims

In the pretrial order, plaintiff asserts several ADA claims against SCL. Plaintiff alleges that SCL terminated plaintiff's employment based on plaintiff's disability; failed to accommodate his request for additional leave time to recover from his disability; retaliated against plaintiff by terminating his employment after he requested an accommodation; and failed to rehire plaintiff after he was cleared to return to work based on his disability and/or in retaliation for requesting an accommodation. SCL moves for summary judgment on all claims. As will be explained, summary judgment is granted in favor of SCL on all ADA claims except plaintiff's failure-to-rehire claims.

*A.     Termination and Failure-to-Accommodate*

The ADA makes it unlawful for an employer to discriminate against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8).  SCL does not dispute that plaintiff had a disability.  And the parties do not dispute that plaintiff was unable to perform his job without accommodation at the time his employment was terminated.  Thus, plaintiff's termination claim and his failure-to-accommodate claim both turn on the issue of whether SCL violated the ADA by failing to accommodate plaintiff's disability.  The Tenth Circuit has established a three-part prima facie test for failure-to-accommodate claims:  An employee must show that he or she is disabled; that he or she is "otherwise qualified"; and that he or she "requested a plausibly reasonable accommodation." *Punt v. Kelly Servs*., 862 F.3d 1040, 1050 (10th Cir. 2017) (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)).[5]  As will be explained, the court's analysis of these claims starts and ends with whether plaintiff requested a plausibly reasonable accommodation.

---

[5]  If an employee makes the requisite showing, an employer may present evidence: "(1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Punt*, 862 F.3d at 1050.  Because plaintiff has not shown that he requested a plausibly reasonable accommodation, the court does not reach plaintiff's arguments that SCL waived its undue hardship defense and that SCL as a matter of law cannot establish undue hardship.

Plaintiff identifies only one possible accommodation for his disability at the time he was fired—an additional 30-day leave of absence following the expiration of his FMLA leave and following the extended 3 months of personal leave that SCL had provided to him.[6] The bulk of the parties' briefs are focused on the issue of whether the leave of absence requested by plaintiff is a reasonable accommodation within the meaning of the ADA. In *Robert v. Board of County Comm'rs of Brown County*, 691 F.3d 1211 (10th Cir. 2012), the Circuit defined the parameters of reasonableness with regard to a leave of absence as a reasonable accommodation:

> There are two limits on the bounds of reasonableness for a leave of absence. The first limit is clear: The employee must provide the employer an estimated date when she can resume her essential duties. *See e.g., Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000); *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324, 1334 (10th Cir. 1998). Without an expected end date, an employer is unable to determine whether the temporary exemption is a reasonable one.

> The second is durational. A leave request must assure an employer that an employee can perform the essential functions of her position in the "near future." *Cisneros*, 226 F.3d at 1129 (quotation omitted). Although this court has not specified how near that future must be, the Eighth Circuit ruled in an analogous case that a six-month leave request was too long to be a reasonable accommodation. *Epps v. City of Pine Lawn*, 353 F.3d 588, 593 (8th Cir. 2003).

*Id.* at 1218. In *Robert*, the Tenth Circuit recognized that a "brief leave of absence for medical treatment or recovery can be a reasonable accommodation," but affirmed the district court's grant of summary judgment on a failure-to-accommodate claim where the plaintiff remained unable to perform the essential functions of her position after a lengthy leave of absence, including 12 weeks

---

[6] In his submissions, plaintiff asserts that he also requested light-duty work as a possible accommodation. While it is undisputed that plaintiff discussed the possibility of part-time work with Ms. Rastorfer at some point prior to the 30-day extension leading up to January 6, 2017, it is also undisputed that plaintiff had not been released to work in any capacity at the time he raised the issue of part-time employment. Thus, any request for part-time work was not a request that defendant could accommodate.

of FMLA leave and an additional 3 to 4 weeks beyond that time. *Id.* at 1214. Because the Circuit found no evidence in the record that the plaintiff's employer "had any estimation of the date [plaintiff] would resume the fieldwork essential to her position" . . . "the only potential accommodation that would allow [plaintiff] to perform the essential functions of her position was an indefinite reprieve from those functions—an accommodation that is unreasonable as a matter of law." *Id.* at 1218-19.

The threshold issue presented by the parties' submissions is how to measure the accommodation requested by plaintiff. Focusing solely on his December 30, 2016 request for 30 days of additional leave, plaintiff contends that the request was objectively reasonable; that Dr. Aberle's note clearly indicated an estimated date when plaintiff could return to work; and Dr. Aberle's note was sufficient to assure SCL that plaintiff would be able to perform his duties in the "near future." SCL, on the other hand, focuses on plaintiff's cumulative exercise of leave beginning in July 2016 and extending through January 6, 2017. Viewed through that lens, SCL contends that the expected end date of plaintiff's disability was uncertain at all times and, in any event, the additional 30-days of leave requested by plaintiff on top of the six months already provided was durationally too long to be considered reasonable under the law.

Although it has not expressly addressed the issue, it is clear that the Tenth Circuit considers leave time in the aggregate when considering whether a request for additional leave is reasonable. *See Hwang v. Kansas State University*, 753 F.3d 1159 (10th Cir. 2014) (assessing reasonableness of request for six-month extension of leave of absence when employer had already granted six months of leave); *Robert v. Board of County Comm'rs of Brown County*, 691 F.3d 1211, 1218 (10th Cir. 2012) (focusing on the fact that plaintiff remained unable to work despite "lengthy leave

of absence, including the period authorized by the Family and Medical Leave Act"); *Cisneros v. Wilson*, 226 F.3d 1113, 1130 (10th Cir. 2000) (describing requested accommodation as a request for "extended leave" after expiration of FMLA leave); *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999) (plaintiff's requested accommodation would have required ten months "combined with and following a one-year medical leave"); *see also Valdez v. McGill*, 462 Fed. Appx. 814, 816 (10th Cir. Feb. 13, 2012) (describing accommodation request as "additional leave" after exhaustion of FMLA leave).   Consideration of the total amount of time that an employee has been unable to work makes sense, of course, in terms of analyzing the reasonableness of an employee's request for additional leave.  If an employer (and, later, the court) were limited to considering only the most recent leave request, an employee could simply keep requesting leave in one-week or one-month increments in the hopes that such requests, standing alone, would be facially reasonable.   Thus, in assessing whether plaintiff in this case requested a reasonable accommodation, the court cannot simply consider plaintiff's December 30, 2016 request for a 30-day leave of absence, but must consider that request in its full context—that is, that the request was made following a six-month leave of absence, granted in increments, in which plaintiff remained unable to work.

In support of his argument that his leave request was reasonable, plaintiff highlights that Dr. Aberle provided an anticipated return-to-work date that indicated to SCL that he would return to work in one month's time.  Plaintiff asserts that these facts are analogous to the Tenth Circuit's opinion in *Rascon v. U.S. West Communications, Inc.*, 143 F.3d 1324 (10th Cir. 1998) and that *Rascon* requires a ruling in plaintiff's favor.  In *Rascon*, the plaintiff suffered from posttraumatic stress disorder. *Id.* at 1326.  Despite the fact that Mr. Rascon was able to work, his doctors

recommended that he undergo intensive in-patient treatment. *Id*. Toward that end, Mr. Rascon requested a four-month paid leave of absence under his employer's disability plan. *Id*. at 1327. Rascon emphasized that a four-month duration was likely for completion of the program. *See id*. The employer refused to provide paid leave, but agreed to provide unpaid leave in thirty-day increments so long as he provided adequate information to the employer's health services department regarding the progression of his treatment. *Id*. Mr. Rascon signed a medical release and he believed that signing the release was all that was required of him in terms of his employer accessing information about his ongoing treatment and progress in the program. *Id*. Prior to Mr. Rascon's treatment in the program, his treating physician contacted his employer and provided information about Mr. Rascon's disability and asked the employer to contact him if it needed further information. Id. at 1328. The employer never reached out to the doctor. *Id*.

Mr. Rascon's employer granted unpaid leave in 30-day increments on four occasions. Id. at 1328-29. During the second month of leave, Mr. Rascon's employer received a detailed report from a treating doctor in the program indicating that plaintiff needed a total of four months to complete the program and explaining the nature of the therapy, plaintiff's favorable prognosis and the treatment plaintiff was receiving. *Id*. at 1328. At the end of the fourth month of leave, his employer cautioned him that he would be removed from the payroll at the end of the 30-day leave period (and that another 30-day leave would not be granted) because it had not received information regarding his continued participation in the program. *Id*. at 1329. Plaintiff's employment was terminated effective June 7, 1993 and he was released from the in-patient program just 10 days later. *Id*.

After a bench trial, the district court found in favor of Mr. Rascon on his failure-to-accommodate claim and expressly found that his requested accommodation was reasonable. *Id.* at 1326, 1333. On appeal, the employer argued that the request was unreasonable as a matter of law. *Id.* at 1333. The Circuit rejected this argument with very little discussion:

> Before Mr. Rascon left for Menlo Park, he told Ms. Sullivan that the expected duration of his treatment was estimated at four months. In early March, Dr. Truitt received a report from Dr. Finley indicating that Mr. Rascon needed approximately four months to complete the program. In actuality, Mr. Rascon was a patient in the Menlo Park program for a little less than five months. Furthermore, U S West was aware of the nature of Mr. Rascon's course of treatment, and U S West was aware of why Mr. Rascon was undergoing this treatment. Finally, the prognosis from Mr. Rascon's doctors was good. His doctors thought that the program was very likely to improve Mr. Rascon's work and home life by assisting him to cope with his posttraumatic stress disorder.

*Id.* at 1334.

There are significant differences between the facts presented here and those before the Circuit in *Rascon*. The plaintiff in *Rascon* notified his employer at the time of the requested leave that he needed four months of leave to complete the program and, shortly after the leave period started, his treating physician confirmed the need for four months to complete the program. His doctor, prior to the expiration of the four months, indicated that plaintiff's prognosis was good and provided the employer with a detailed report on plaintiff's course of treatment. Ultimately, Mr. Rascon's prediction and his treating physician's predictions were essentially accurate—he completed the program in just over four months. Moreover, there was never a question that Mr. Rascon would be able to perform the essential functions of his position as soon as he returned from the program, just as he had before beginning the program. *See Sanchez v. Vilsack*, 695 F.3d 1174, 1182 (10th Cir. 2012) (emphasizing that there was no evidence in *Rascon* that he could not

perform the essential functions of his position).  Stated another way, Mr. Rascon was able to perform the essential duties of his job at all times such that there was no real uncertainty about if or when he would be able to return to work.

Conversely, Dr. Aberle's FMLA certification indicated that plaintiff's period of incapacity would last "at least" until October 1, 2016.  There is no evidence that plaintiff ever provided SCL with an estimated return date at any time when he requested leave extensions for October, November and December 2016.  In fact, when plaintiff requested an extension in late November 2016, he indicated that he was "still recovering from a serious illness resulting in a disability" and that he was not able to provide "a specific date for return to work in light of continuing medical treatment, including therapy."  While plaintiff estimated a return-to-work date of January 6, 2017 (a prediction which was not accurate), he cautioned that "medical reevaluation may be necessary" at the end of his approved leave.  For six months, then, SCL had no information about when, if ever, plaintiff might be able to return to work or when his impairment might end.  For six months, SCL did not receive any updates from plaintiff's treating physician in terms of plaintiff's course of treatment or his prognosis.  While Dr. Aberle's December 30, 2016 note anticipated a return-to-work date of February 6, 2017, that note also indicated the need for another medical evaluation at that time and that continued physical therapy was required.  The note, then, does not establish that SCL had "reliable information in hand, prior to [plaintiff's] termination, as to the expected duration of [plaintiff's] impairment," as opposed to the expected duration of plaintiff's leave request.  *See Cisneros*, 226 F.3d at 1130 ("[T]his court has required an employee to provide an *expected duration of the impairment* (not the duration of the leave request.") (emphasis in original).   This is particularly true in light of the fact that plaintiff repeatedly and inaccurately

suggested to SCL that he needed only one more month to recover.  *See Valdez v. McGill*, 462 Fed. Appx. 814, 818 (10th Cir. Feb. 13, 2012) (employer properly denied request for additional leave beyond exhaustion of FMLA leave despite doctor's note indicating plaintiff could return to work in three weeks where prior assurances of returning to work had been inaccurate and doctor's note did not state that impairments would be resolved in three weeks).  Finally, unlike the facts in *Rascon*, it is undisputed that plaintiff was totally unable to work at the time he was terminated. For these reasons, plaintiff's reliance on *Rascon* is not persuasive to the court.

SCL, in turn, relies primarily on the Tenth Circuit's decision in *Hwang v. Kansas State University*, 753 F.3d 1159 (10th Cir. 2014), in which the Circuit appeared to establish a bright-line rule that an employer is not required to provide more than 6 months of leave when the plaintiff cannot work in any capacity during that period.  In that case, a professor at Kansas State University signed a one-year contract to teach three semesters of classes. *Id.* at 1161.  After signing the contract, Ms. Hwang was diagnosed with cancer.  *Id.*  She requested and was granted six months of leave. *Id.*  As the spring semester approached, Ms. Hwang, at the suggestion of her doctor, requested additional leave until the end of the spring semester, but promised to return to teach the summer semester.  *Id.*  As the result of the University's mandatory policy of limiting leave to six months, the contract was terminated.  *Id.*

Ms. Hwang filed a lawsuit alleging that the University's failure to provide her with more than 6 months of medical leave violated the Rehabilitation Act.  *Id.*[7]  The University filed a motion to dismiss that claim under Rule 12(b)(6) on the grounds that Ms. Hwang was not a "qualified

---

[7] Cases decided under section 504 of the Rehabilitation Act are applicable to cases brought under the ADA.  *See Woodman v. Runyon*, 132 F.3d 1330, 1339 n.8 (10th Cir. 1997).

individual" because she could not perform the essential functions of her job at all. *See id*. The

district court granted the motion. *Id.* On appeal, the Circuit affirmed the dismissal of the claim.

*Id*. As explained by the Circuit:

> [T]here's . . . no question she wasn't able to perform the essential functions of her job even with a reasonable accommodation. By her own admission, she couldn't work at any point or in any manner for a period spanning more than six months. It perhaps goes without saying that an employee who isn't capable of working for so long isn't an employee capable of performing a job's essential functions—and that requiring an employer to keep a job open for so long doesn't qualify as a reasonable accommodation. After all, reasonable accommodations—typically things like adding ramps or allowing more flexible working hours—are all about enabling employees to work, not to not work.
>
> * * * *
>
> [I]t's difficult to conceive how an employee's absence for six months—an absence in which she could not work from home, part-time, or in any way in any place—could be consistent with discharging the essential functions of most any job in the national economy today. Even if it were, it is difficult to conceive when requiring so much latitude from an employer might qualify as a reasonable accommodation. Ms. Hwang's is a terrible problem, one in no way of her own making, but it's a problem other forms of social security aim to address. The Rehabilitation Act seeks to prevent employers from callously denying reasonable accommodations that permit otherwise qualified disabled persons to work—not to turn employers into safety net providers for those who cannot work.

*Id*. at 1161-62.  Importantly, the Circuit in *Hwang* noted that the EEOC, in its enforcement manual,

agreed with "our conclusion that holding onto a non-performing employee for six months just

isn't something the Rehabilitation Act ordinarily compels."  *Id*. at 1163.  Finally, the Circuit noted

that the University's six-month leave policy "was more than sufficient to comply with the Act in

nearly any case" and that Ms. Hwang had not alleged unequal enforcement of that policy's terms.

*Id*. at 1164.

Plaintiff attempts to distinguish *Hwang* by highlighting that Ms. Hwang was under a one-year contract and had yet to perform under that contract. While the court is cognizant of that factual distinction, the express language utilized by the Circuit does not reflect an intent to limit *Hwang* to its facts. Indeed, the Circuit suggests that the six-month limit on leave for an employee who cannot perform his or her job would apply to "most any job in the national economy" and further suggested that it could hardly conceive of a situation in which a leave of absence beyond six months might qualify as reasonable. And of course, the language from the EEOC manual referenced favorably by the Circuit was not limited to an employee on a one-year contract. In fact, at least two district judges in the Circuit have read *Hwang* broadly as SCL does here. *See White v. Town of Hurley*, 2019 WL 1411135, at *41-42 (D.N.M. Mar. 28, 2019) (interpreting *Hwang* as standing for the proposition that a request for leave that extends more than 6 months is per se unreasonable if the plaintiff cannot perform any work during that period); *Aubrey v. Koppes*, 2018 WL 296068, at *7 (D. Colo. Jan. 4, 2018) (same).[8]

*Hwang*, then, supports the conclusion that six months of leave is generally the tipping point in terms of whether a leave of absence is reasonable when the employee needing leave cannot work at all during the leave period. The court believes that *Hwang* supports the entry of summary judgment in favor of SCL on plaintiff's failure-to-accommodate and termination claims. Here, like *Hwang*, plaintiff was granted a total of six months of leave consistent with SCL's personal leave policy. When he was terminated after that six-month period, he undisputedly could not

---

[8] Recall also that the Circuit in *Robert*, in discussing the durational limits of a reasonable leave of absence, cited with approval an Eighth Circuit decision holding that a six-month leave request was too long to be a reasonable accommodation. *Robert*, 691 F.3d at 1218 (citing *Epps v. City of Pine Lawn*, 353 F.3d 588, 593 (8th Cir. 2003)).

return to work.    But even aside from *Hwang*, the court believes that summary judgment is appropriate.  The undisputed facts demonstrate that SCL extended plaintiff an additional 3 months of leave after the expiration of his FMLA leave.  At no time when making those 3 requests did plaintiff provide to SCL an estimated end date for his impairment or an estimated return to work date and, in fact, plaintiff expressly stated that he could not provide a date in light of his continuing medical treatment.    In light of plaintiff's failure to provide an expected end date for his impairment, SCL was not obligated under the ADA, as interpreted by the Tenth Circuit, to grant those requests.    *Robert*, 691 F.3d at 1218 (leave request beyond exhaustion of FMLA leave was unreasonable as a matter of law where employer did not have a reasonable estimate of when plaintiff would be able to resume all essential functions of employment); *Cisneros*, 226 F.3d at 1130 (employer properly denied additional leave request after exhaustion of FMLA where duration of illness at that time was admittedly unknown); *Valdez v. McGill*, 462 Fed. Appx. 814, 818 (10th Cir. Feb. 13, 2012) (employer properly denied leave request after exhaustion of FMLA leave where there was no evidence that impairments would be resolved in near future).  It makes little sense, then, to hold that SCL violated the ADA by failing to grant the fourth extension request just because plaintiff by that time had a doctor's note indicating a potential return-to-work date of February 6, 2017.  Dr. Aberle's December 30, 2016 simply cannot retrigger SCL's liability when SCL would not have been liable if it had terminated plaintiff immediately after his FMLA leave was exhausted.  *See Robert v. Board of County Comm'rs of Brown County*, 691 F.3d 1211, 1217 (10th Cir. 2012) (employers should not be punished for going beyond minimum standards of ADA); *Terrell v. USAir*, 132 F.3d 621, 626 n.6 (11th Cir. 1998) ("An employer that bends over backwards to accommodate a disabled worker . . . must not be punished for its generosity by being

18

deemed to have conceded the reasonableness of so far-reaching an accommodation."), *cited with approval in EEOC v. TriCore Reference Laboratories*, 493 Fed. Appx. 955, 960 n.7 (10th Cir. Aug. 16, 2012); *see also Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (concluding that a request for an indefinite leave of absence to recover from cluster headaches was not a reasonable accommodation although employer had previously granted such requests).

For the foregoing reasons, the court grants summary judgment in favor of SCL on plaintiff's discriminatory discharge and failure-to-accommodate claims. The record reflects that, at the time of plaintiff's termination, SCL did not have an expected end date with respect to plaintiff's disability or a reasonable estimate of when plaintiff could resume his duties. As such, plaintiff's request for yet another 30-day leave was essentially a request for indefinite leave—an accommodation that is unreasonable as a matter of law. *See Robert*, 691 F.3d at 1218-19; *see also Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) (If employees are deemed entitled under the ADA to extended leave beyond FMLA leave, "the ADA is transformed into a medical-leave statute—in effect, an open-ended extension of the FMLA. That's an untenable interpretation of the term 'reasonable accommodation.'").

B.    *Retaliatory Discharge*

Plaintiff asserts that SCL terminated his employment in retaliation for his accommodation request.[9] The ADA's retaliation statute provides that "[n]o person shall discriminate against any

---

[9] The court has concluded as a matter of law that plaintiff's accommodation request was unreasonable. District courts are split on whether a request for an unreasonable accommodation constitutes protected activity for purposes of an ADA retaliation claim. *Compare White v. Town of Hurley,* 2019 WL 1411135, at *44 & n.69 (D.N.M. Mar. 28, 2019) (plaintiff did not engage in

individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *See Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (quoting 42 U.S.C. § 12203(a)). Where a plaintiff relies on circumstantial evidence to establish his claim, the *McDonnell Douglas* burden-shifting framework applies. *Id.* Under this framework, once the plaintiff establishes a prima facie case of retaliation, the employer has the burden of showing it had a legitimate, nonretaliatory reason for the adverse action. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1186 (10th Cir. 2016) (quotation omitted). If the employer can do so, the burden of production then shifts back to the plaintiff to prove pretext. *Id.* To make out a prima facie case, plaintiff must demonstrate that he engaged in protected opposition to discrimination; a reasonable employee would have found SCL's subsequent action to be materially adverse; and (3) a causal connection exists between his protected activity and SCL's action. *See Lincoln,* 900 F.3d at 1209.

In its motion for summary judgment, SCL contends that plaintiff cannot establish a causal connection between his accommodation request and his termination and, in any event, cannot establish that SCL's proffered reason for its decision was pretextual. SCL highlights that it granted plaintiff's 30-day leave request in October 2016; plaintiff's 30-day leave request in November 2016; and plaintiff's 30-day leave request in early December 2016 before it decided to

---

protected activity when he requested an unreasonable accommodation of six months of leave) *with Lamm v. DeVaughn James, LLC*, 2019 WL 3006453, at *13-14 (D. Kan. July 10, 2019) (plaintiff's request to work half-days "whenever she felt anxious" was not a request for a reasonable accommodation but was nonetheless protected activity for purposes of retaliation claim). Because SCL does not raise that argument, the court does not address it.

terminate plaintiff's employment after he had been unable to work at all for 6 months. Plaintiff, in turn, highlights that a causal connection is established by virtue of the one-week gap between plaintiff's December 30, 2016 leave request and the termination decision and that sufficient evidence of pretext exists to require a jury trial on this claim.

The court assumes without deciding that the interval between plaintiff's December 30, 2016 request for another extension of leave and his termination is sufficient to establish the requisite causal connection. Thus, the burden of production shifts to SCL to show that it had a legitimate, nonretaliatory reason for terminating plaintiff's employment. *See Foster*, 830 F.3d at 1193-94. "This burden is one of production, not persuasion; it can involve no credibility assessment." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The Tenth Circuit has characterized this burden as "exceedingly light," and the court finds that SCL has carried it here. *See id*. According to SCL, it terminated plaintiff's employment because plaintiff failed to return to work after six months of leave and defendant was no longer willing to hold that position open for plaintiff in light of staffing issues in the power plant. [10] Thus, the court continues to the final stage of the analysis—whether plaintiff has come forward with evidence to show that SCL's stated reason is pretextual. *See Foster,* 830 F.3d at 1194. A plaintiff demonstrates pretext

---

[10] Plaintiff contends that defendant's proffered reason is "legally insufficient" such that the burden never shifts back to plaintiff. According to plaintiff, defendant's reliance on "staffing issues" is neither clear nor reasonably specific. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981) (proffered reason for adverse action must be reasonably specific and clear). This argument is rejected. While defendant generally references "staffing issues" in its brief, it cites specific Statements of Fact supporting that reference which, in turn, cite specific portions of the record detailing those staffing issues.

in this context by showing either that a retaliatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *See id*. "In establishing pretext, an employee can show the employer's proffered reason was so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Id*. (quoting *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007)).

The court has already concluded as a matter of law that SCL was not required to grant the December 30, 2016 leave request and was not required to wait any longer for plaintiff to return to work. In other words, the court has held that defendant's termination of plaintiff's employment did not violate the discrimination provisions of the ADA. Thus, the mere fact that SCL denied the leave request and, instead, terminated plaintiff's employment cannot establish that a retaliatory reason likely motivated SCL to terminate plaintiff's employment. *See Robert v. Board of County Commr's of Brown County*, 691 F.3d 1211, 1219 (10th Cir. 2012) (finding no pretext for retaliation where employer was not required to grant additional leave and terminated employee who failed to return to work after exhausting FMLA leave). Plaintiff, however, suggests that pretext exists because SCL was desperately trying to fill other open power plant positions such that it defies logic that it would terminate plaintiff, an experienced employee who would "soon be released to work." But the fact that SCL had open positions in the power plant does not suggest that SCL's proffered reasons for firing plaintiff were not the true reasons. As explained by Sister Panisko, SCL had posted open positions (with little success) for less experienced power plant operators. By continuing to hold plaintiff's job for him indefinitely, SCL was unable to post an open position for a more experienced power plant employee—a position that might be more desirable and easier to fill because of the higher salary that was attached to it.

Plaintiff also asserts that the Personal Leave of Absence policy is "flexible" and does not limit leave to six months. Nonetheless, SCL's practice was to limit leave to six months in length— a policy that is "more than sufficient" to comply with the ADA in "nearly any case." *See Hwang*, 753 F.3d at 1164. SCL followed that practice when considering plaintiff's numerous leave requests. There is no evidence that other employees were routinely granted leaves of absence of longer than 6 months. In fact, the evidence reflects that only two employees in a nine-year-period were granted longer leaves and plaintiff fails to suggest that those employees were like him in any relevant way. Thus, the fact that SCL had a generous leave policy (and that plaintiff benefitted from that policy) does not tend to show that SCL terminated plaintiff in retaliation for requesting yet another 30 days of leave.

Finally, plaintiff places a great deal of emphasis on the testimony of Mr. Vornholt, plaintiff's direct supervisor. Mr. Vornholt testified that the operation of the power plant did not suffer in any respect due to plaintiff's extended absence; that no employees complained to him about working overtime; and that he was not aggravated about plaintiff's extended leave. Mr. Vornholt was not involved in the decision to terminate plaintiff's employment. *See Kendrick v. Penske Transp. Servs., Inc*., 220 F.3d 1220, 1231 (10th Cir.2000) (a proper challenge of pretext considers the facts as they appear to the person making the decision to terminate plaintiff). In any event, his testimony does not undermine Sister Panisko's testimony that power plant employees were working overtime in light of plaintiff's absence and that SCL wanted the ability to post plaintiff's position in the hopes of attracting an experienced applicant. Moreover, this testimony does not undermine the undisputed facts that plaintiff had been unable to work for 6 months at the

time he was fired and that SCL's personal leave policy generally did not provide leave beyond 6 months.

For the foregoing reasons, plaintiff has failed to meet his burden of demonstrating pretext and summary judgment is warranted on plaintiff's claim that SCL terminated his employment in retaliation for requesting additional leave. *See Robert*, 691 F.3d at 1219.


C.    *Discriminatory Failure to Rehire*

In the pretrial order, plaintiff asserts that SCL failed to rehire him based on his disability. Defendant moves for summary judgment on this claim.   In the failure-to-hire context, the prima facie case typically requires a plaintiff to show that he or she belongs to a protected class; that he or she applied for and was qualified for a job for which the employer was seeking applicants; despite being qualified, the plaintiff was rejected; and after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). According to defendant, summary judgment is required because plaintiff cannot show that he ever applied for rehire and, thus, cannot establish a prima facie case.[11]

It is undisputed that plaintiff never submitted a formal application to return to his job as a power plant operator.  According to SCL, this fact is fatal to plaintiff's claim. But the law does not necessarily require a plaintiff to submit a formal application for employment. *See Bennet v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001) (To establish an adverse employment action in

---

[11] In addition to his discriminatory failure-to-rehire claims, plaintiff sets forth an ADA retaliatory failure-to-rehire claim in the pretrial order.  SCL does not address this claim in its motion.

the hiring context, the plaintiff "must show, among other things, that she applied for—or at least sought—the position at issue."); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251–52 (10th Cir. 1992) (Though the law "does not require that a plaintiff formally apply for the job in question," it does require "either that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job."); *see also Dirusso v. Aspen Sch. Dist. No. 1*, 123 Fed. Appx. 826, 832–33 (10th Cir. Dec. 15, 2004) (law does not require that plaintiff formally apply for job in question, only that employer be on specific notice that plaintiff seeks employment; district court improperly granted summary judgment on "application" prong of prima facie case where it was undisputed that employer knew plaintiff desired the job). The question, then, is whether plaintiff has come forward with sufficient evidence from which a jury could reasonably infer that SCL was "on specific notice" that plaintiff was seeking re-employment as a power plant operator. Viewed in the light most favorable to plaintiff, the evidence permits such an inference.

Ms. Rastorfer testified that submitting a resume or formal application is a "critical" step in the rehiring process and that it was "standard practice" for SCL to require former employees to follow the "regular application process." But she was not sure whether former employees were always required to submit formal applications. She did testify that SCL has "cracked down" on the formal application process in the last five years when their skilled nursing facility became licensed through the state, which requires background checks and an interview process for "any employee that walks into that building." Still, Ms. Rastorfer could not identify any former employee who was required to go through the regular application process when seeking to return to employment with SCL, with the exception of one employee who worked in the licensed skilled

nursing facility. It is undisputed that no written policy requires former employees to submit a formal application for rehire.

Moreover, on February 20, 2017, plaintiff faxed a letter to Ms. Rastorfer in which he expressly asked whether his position was still open and stated, "If it is, or there is another job for me, I would like to have it. So please call or fax me if or when I can come back to work." While SCL highlights that Ms. Rastorfer repeatedly told plaintiff during their March 1, 2017 phone call that he needed to submit an application or resume if he wanted to reapply, that conversation also suggests that the proverbial ball was in Ms. Rastorfer's court in terms of researching the pay issue and getting back to plaintiff on that issue and that the parties would "go from there."

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that SCL did not necessarily require former employees to submit a formal application for rehire and that SCL was on specific notice that plaintiff was seeking rehire as a power plant operator. In other words, material factual disputes exist as to whether plaintiff applied for or otherwise sought a power plant operator position. Defendant does not challenge any other elements of plaintiff's prima facie case as to this claim, nor does it assert that it had a legitimate, nondiscriminatory reason for failing to rehire plaintiff (other than the fact that plaintiff never applied for that position). Thus, the burden never shifts to plaintiff to establish pretext and, accordingly, a jury must resolve this claim. *See Hay v. Family Tree, Inc*., 2019 WL 2137392, at *5 (D. Colo. May 16, 2019) (genuine issues of fact precluded summary judgment on "application" element of

failure-to-hire claim where a supervisor testified that she knew that plaintiff had expressed interest in the position).[12]

## V. Age Discrimination Claims

In the pretrial order, plaintiff asserts that SCL terminated his employment and then failed to rehire him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Plaintiff's age-based failure-to-rehire claim survives summary judgment for the same reasons as explained in connection with his disability-based failure-to-rehire claim.[13] The court, then, addresses only plaintiff's discriminatory discharge claim. As plaintiff has no direct evidence of discrimination, his claims are analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012). Under *McDonnell*

---

[12] SCL contends that plaintiff's disability-based failure-to-rehire claim is barred because it is inconsistent with plaintiff's application for and receipt of social security disability benefits. At the time plaintiff applied for and was deemed eligible for benefits in November 2016, he was undisputedly unable to work. While he was still receiving benefits in February 2017 when he claims he was able to return to work, SCL has not shown at this juncture that plaintiff's receipt of benefits or his statements to the SSA are "clearly inconsistent" with his position in this case. *See Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999) (the SSA sometimes grants SSDI benefits to individuals who not only can work, but are working); *Schneider v. Landvest Corp.*, 2006 WL 322590, at *32-33 (D. Colo. Feb. 9, 2006) (defendants did not establish judicial estoppel defense where record was unclear as to what representations the plaintiff actually made to the SSA and/or whether the plaintiff was attempting to work as part of a trial work period authorized by the SSA).

[13] SCL does not separately brief plaintiff's ADEA failure-to-rehire claim and, instead, addresses that claim only as an ADA claim. Nonetheless, because the prima facie elements of a failure-to-hire claim are the same regardless of the statutory basis for the claim, the court simply reiterates that plaintiff's claim survives summary judgment under the ADEA because material factual disputes exist as to whether plaintiff applied for or otherwise sought a power plant operator position and SCL does not otherwise challenge that claim.

*Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination. *Id.* To set forth a prima facie case of discrimination, plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination." *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)). If he establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If defendant meets this burden, summary judgment against plaintiff is warranted unless he introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent." *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).[14]

A.    *Plaintiff's Prima Facie Case*

In its motion for summary judgment, SCL contends that plaintiff cannot establish a prima facie case of discriminatory discharge because he has not come forward with any evidence suggesting that his termination "took place under circumstances giving rise to an inference of discrimination." Specifically, defendant contends that plaintiff has failed to demonstrate that he was treated less favorably than younger employees. This argument is rejected. The Tenth Circuit has repeatedly cautioned that comparison to similarly situated employees is not required as part of a plaintiff's prima facie case. *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005) (collecting cases); *English v. Colo. Dept. of Corrs.*, 248 F.3d 1002, 1008 (10th Cir. 2001)

---

[14] In his response to the motion for summary judgment, plaintiff states that he also intends to proceed under a "pattern and practice" theory of age discrimination. Plaintiff has not preserved that theory in the pretrial order and, in any event, such claims are not available to individual plaintiffs. *See Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 633 (10th Cir. 2012).

(In disciplinary discharge cases, a "plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*."). To raise an inference of discrimination at the prima facie stage in a discriminatory discharge case, a plaintiff's burden is not onerous—he need only show that he belongs to a protected class; that he was qualified for his job; and that the job was not eliminated after his discharge. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999); *see also Nguyen v. Gambro BCT, Inc.*, 242 Fed. Appx. 483, 487-89 (10th Cir. 2007) (prima facie step is utilized to eliminate the two most common explanations for termination—lack of qualification or the elimination of the position). Plaintiff was 61 years of age at the time of his termination; he was qualified for the position as evidenced by his having held that position for more than 25 years with no performance-related issues; and his position was not eliminated after his termination. For purposes of summary judgment, plaintiff has satisfied his prima facie case of discriminatory discharge. This aspect of defendant's motion is denied.[15]


B.      *The Pretext Analysis*

Because plaintiff has satisfied his burden of establishing a prima facie case of discriminatory discharge, the court turns to the pretext analysis. Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the

---

[15] For the first time in its reply brief, defendant contends that plaintiff cannot establish a prima facie case because he was not doing *any* work at the time he was terminated, let alone satisfactory work. The court declines to address this argument. *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." *Carter*, 662 F.3d at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)). A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently. *Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011). In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

As noted earlier, SCL contends that it terminated plaintiff's employment because plaintiff failed to return to work after six months of leave and defendant was no longer willing to hold that position open for plaintiff in light of staffing issues in the power plant. In an effort to show that these reasons are pretextual, plaintiff relies on the same evidence that the court has already rejected in connection with his ADA retaliatory discharge claim (and that the court necessarily rejects here) as well as additional evidence that he contends shows an age-based animus on the part of SCL. Specifically, plaintiff asserts that SCL terminated a 66-year-old employee in September 2016 and terminated a 58-year-old employee in March 2018. But the record reflects that the first employee actually retired voluntarily and that the second employee was terminated after failing a drug test. This evidence, then, does not reflect an age-based animus on the part of SCL. Plaintiff also contends that SCL hired a string of young employees between the ages of 18 and 30 from

2016 through 2018. But as SCL highlights, there is no evidence that SCL selected these applicants over older applicants or, for that matter, over any other applicant. There is simply no evidence in the record as to whether other people applied for those openings and, if so, the ages of those applicants. In the absence of such evidence, the fact that SCL hired younger employees cannot establish age-based animus or show that SCL terminated plaintiff on the basis of his age. *See Bittel v. Pfizer, Inc.*, 307 Fed. Appx. 132 (10th Cir. Jan. 9, 2009) (evidence of ages of individuals who are hired and fired is not probative of discrimination or pretext where plaintiff does not rule out possible explanations for hiring and firing rates and where plaintiff fails to identify the ages of applicants not hired and the ages of employees who were not terminated) (citing *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991)).

For the foregoing reasons, plaintiff has failed to meet his burden of demonstrating pretext and summary judgment is warranted on plaintiff's claim that SCL terminated his employment on the basis of his age.

## VI.    Back Pay and Front Pay

Lastly, SCL moves for summary judgment on plaintiff's claims for back pay and front pay based on plaintiff's failure to mitigate his damages. According to SCL, plaintiff failed to reapply at SCL and failed to use reasonable diligence in seeking other employment. As explained earlier, genuine issues of fact exist as to whether plaintiff was required to submit a formal application to be considered for the power plant operator position and the evidence suggests that SCL knew he was interested in that position but failed to follow up with him after promising to do so. Moreover, the evidence reflects that plaintiff made some effort to find other employment and the jury must

decide whether that effort was sufficient. Finally, SCL has the burden of proof on this affirmative defense and it has not remotely come forward with evidence that "suitable positions" (other than the power plant operator position which plaintiff undisputedly expressed interest in) were available to him. *See McClure v. Independent Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000). This defense is clearly not amenable to summary judgment and the motion is denied.[16]

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for partial summary judgment (doc. 46) is denied and defendants' motion for summary judgment (doc. 48) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** summary judgment in favor of defendant Kristina Rastorfer is granted on all claims asserted against her and she is dismissed as a defendant in this lawsuit.

**IT IS SO ORDERED.**

Dated this 6th day of September, 2019, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[16] In the alternative, defendant asks the court to reduce plaintiff's damages by the amount he has received in SSDI benefits. Plaintiff urges that those disability benefits are a collateral source such that no offset or deduction is permitted. Defendant offers no reply to that argument. Because this issue is not adequately briefed, the court declines to address it and defendant should file a motion in limine on the issue if it intends to press it.